UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Charles Glenn

    v.                                  Civil No. 11-cv-475-JD
                                        Opinion No. 2013 DNH 097

New Hampshire State
Prison Family Connections
Center, et al.


O R D E R

Charles Glenn, proceeding pro se and in forma pauperis, brought a civil rights action pursuant to 42 U.S.C. § 1983, alleging that New Hampshire Department of Corrections officials and employees had violated his constitutional and statutory rights during his incarceration. As construed on preliminary review under 28 U.S.C. § 1915A, Glenn alleges claims that Chaplain James Daly, Warden Richard M. Gerry, and Acting Commissioner Christopher Kench violated his rights under the Free Exercise and Establishment Clauses of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[1]

---

[1] All other claims and the claims against the defendants in their official capacities were dismissed on preliminary review.

The defendants move for summary judgment.  Glenn did not file a response.

## Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." Id. at 248.  The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).  An unopposed motion for summary judgment must be considered on the record presented.  Sanchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 212 (1st Cir. 2008).

Under the local rules of this district, a motion for summary judgment must be filed with a supporting memorandum that includes "a short and concise statement of material facts, supported by appropriate record citations, as to which the moving party contends there is no genuine issue to be tried."  LR 7.2(b)(1).

In response, the adverse party must include "a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists to require a trial."  LR 7.2(b)(2).  If the adverse party fails to oppose the properly supported facts in the moving party's statement, "the moving party's factual statement shall be deemed admitted."  Id.


## Background

Because Glenn did not file a response to the defendants' motion for summary judgment, the properly supported facts in the defendants' factual statement are deemed to be admitted.

Glenn was an inmate in the New Hampshire Department of Corrections who was housed at the New Hampshire State Prison in Concord and at the Northern Correctional Facility in Berlin. Glenn states that he is a practicing Muslim.  His claims in this case arise from issues Glenn encountered in practicing his religion in prison.

In his complaint, as construed on preliminary review, Glenn contends that under Islamic law, Muslims must attend Jum'ah services every Friday.  Glenn states that he had not been provided Jum'ah services at the prison for about three years prior to October of 2011, that the prison has not provided him

access to an Imam, and that the prison has not provided Islamic religious literature.  He also states that he has not been allowed to maintain a diet, facial hair, and prayer in accordance with the requirements of Islam.  In contrast, Glenn asserts that the prison provides Christian chaplains, who conduct regular Christian services, and that the prison provides Christian religious literature to inmates.

The Department of Corrections employs two chaplains, who are both Christian, for its three facilities.  The Department does not employ a chaplain who is qualified to conduct Jum'ah services or to provide other Islamic religious services or guidance.  The Department's budget only funds the two existing chaplain positions.  The defendants represent that only three percent of the prison population identifies a religious affiliation as Muslim or "Nation of Islam."

The prison relies on "Approved Religious Volunteers" to provide religious services for Muslim inmates under New Hampshire Department of Corrections Policy and Procedure Directive 7.17.  Chaplain Daly has contacted Muslim communities in New Hampshire and Massachusetts to find Approved Religious Volunteers but had succeeded in having services for only a few months in 2007 and a few more months in 2010.  Since December of 2012, however, an Approved Religious Volunteer has provided Jum'ah services at the

prison in Concord every Friday.  The Jum'ah services are conducted in the prison chapel and are broadcast on the prison television channel at both the Concord and Berlin facilities. The services are also recorded so that they can be aired in the future when a volunteer may not be available to conduct services.

In addition to the Jum'ah services now being provided on Friday afternoons, Muslim prisoners are allowed certain accommodations for their religious practices.  They may request dietary restrictions, permission for facial hair, time for prayer, and observance of Ramadan.  When an Approved Religious Volunteer is available a Ramadan feast is allowed.

## Discussion

The defendants move for summary judgment on the grounds that Glenn did not exhaust administrative remedies as to certain claims and that the facts show that they did not violate RLUIPA, the Free Exercise Clause, the Establishment Clause, or the right to equal protection under the Fourteenth Amendment.  As is noted above, Glenn did not file a response to the motion.

A.  Exhaustion of Administrative Remedies

"The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that '[n]o action shall be brought

with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 11 (1st Cir. 2010). The PLRA exhaustion requirement mandates "proper exhaustion," meaning that the prisoner must follow the grievance procedure as required by the prison. Jones v. Bock, 549 U.S. 199, 218 (2007). As a result, complaints made in a manner that does not comply with the prison grievance procedure do not satisfy the exhaustion requirement. Woodford v. Ngo, 548 U.S. 81, 92-103 (2006).

The defendants acknowledge that Glenn exhausted the available administrative remedies as to his claims about the lack of Jum'ah services. They contend that although Glenn mentioned obtaining a Quran, a shaving pass, and an Islamic diet in some grievances, he did not follow the required procedure for those complaints. Therefore, the defendants argue, the only issue that was properly exhausted is lack of Jum'ah services at the prison.

Glenn does not dispute the defendants' version of events or show that the other complaints were properly exhausted. Therefore, only his claims based on the prison's failure to provide Jum'ah services are considered.

B.  <u>RLUIPA and Free Exercise Clause Claims</u>

Glenn contends that the prison's failure to provide regular Jum'ah services violates RLUIPA and the Free Exercise Clause of the First Amendment.  Because "RLUIPA provides greater protection to inmates' free-exercise rights than does the First Amendment," Glenn's free exercise claim is considered with his RLUIPA claim. <u>Bader v. Wrenn</u>, 675 F.3d 95, 98 (1st Cir. 2012).

> Under RLUIPA,
>
> no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

41 U.S.C. § 2000cc-1(a).  To succeed on a RLUIPA claim, the plaintiff must prove that his religious exercise has been burdened and that the burden is substantial.  <u>Spratt v. Rhode Island Dep't of Corrs.</u>, 482 F.3d 33, 38 (1st Cir. 2007).  If the plaintiff meets that standard, the government must show that the burden on religious exercise furthers a compelling interest and that the burden imposed is the least restrictive means of achieving that interest.  <u>Id.</u>

The First Circuit has not defined "a substantial burden" for purposes of RLUIPA but has assumed without deciding that it means

7

a substantial pressure on the inmate "'to modify his behavior and to violate his beliefs . . . .'"  Spratt, 482 F.3d at 38 (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)); see also Cryer v. Spencer, --- F. Supp. 2d ---, 2013 WL 1192354, at *4 (D. Mass. March 21, 2013).  Despite its broad language, RLUIPA was not "meant to govern the siting of prisons, general policies of assigning prisoners or determining transfers, or the failure to assign prisoners by religion."  Bader, 675 F.3d at 99.  Instead, the focus of Congress in enacting RLUIPA was "internal prison rules and procedures limiting religious practice."  Id.

    In Bader, the plaintiff challenged the defendants' decision to transfer him from the Concord prison, where a rabbi was available to assist with Jewish celebrations, services, and rituals, to the Berlin prison, where no Jewish services or Jewish religious activities were available.  675 F.3d at 96-97.  When Bader inquired about Jewish services at the Berlin prison, the chaplain tried without success to find a volunteer to provide services.  Id. at 97.  The First Circuit agreed with the District Court that the lack of religious services and activities at the Berlin prison was due to the location of the prison and the absence of outside clergy and volunteers and was not because of prison practices or procedures.  Id. at 98.  Although the

Department of Corrections transferred Bader to the Berlin prison, the court concluded that "Bader's disadvantages in the Berlin prison depend importantly on proximate actions and decisions not attributable to the government and are too attenuated from the transfer decision to be considered government imposed burdens under RLUIPA." Id. at 99.

In this case, Glenn challenges the prison's procedure of relying on Approved Religious Volunteers to provide Jum'ah services, instead of hiring an Imam, and contends that the absence of Jum'ah services was the result of that procedure. If a shortage of appropriate volunteers was the reason the prison could not provide Jum'ah services, the resulting burden on Glenn's religious exercise would not be attributable to the government, as was decided in Bader. Id. at 99. If, on the other hand, the prison's procedure itself precluded Ju'mah services at the prison, the procedure could constitute a governmentally-imposed burden under RLUIPA. The distinction need not be made in this case, because the record for summary judgment shows that the defendants did not violate RLUIPA.

If the plaintiff could meet his burden of showing that the absence of Jum'ah services was a substantial burden on his religious exercise, the defendants would have to show that the Approved Religious Volunteer procedure is the least restrictive

means of furthering a compelling government interest.  See Spratt, 482 F.3d at 38.  The prison context matters for purposes of showing a compelling interest so that courts apply the standard with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  Cutter v. Wilkinson, 544 U.S. 709, 723 (2005) (internal quotation marks omitted); see also Garner v. Kennedy, 713 F.3d 237, 245 (5th Cir. 2013); DeMoss v. Crain, 636 F.3d 145, 154 (5th Cir. 2011).

   The defendants represent, and Glenn does not dispute, that the policy behind requiring Approved Religious Volunteers is to maintain security and good order in the prison.  Glenn does not suggest that the prison should allow other inmates to conduct Jum'ah services or that the prison has turned away volunteers that could have provided religious services or support for Muslim inmates.  Instead, Glenn asserts that the defendants should have hired an Imam to conduct services at the prison and provide religious support for Muslim inmates because the Approved Religious Volunteer procedure effectively denied him access to religious services.

10

As is noted above, the Department of Corrections's budget only funds the two existing chaplain positions. The defendants represent that only three percent of the prison population identifies as Muslim or "Nation of Islam," making that group a small fraction of the whole prison population.[2] In contrast, half of the prison population is Christian, having identified religious affiliation as Catholic or Protestant. The Department's budgetary limitations coupled with the small group of Muslim inmates supports the decision to use Approved Religious Volunteers to provide Muslim religious services as the least restrictive means to further a compelling interest.

Therefore, the defendants are entitled to summary judgment on Glenn's claims under the Free Exercise Clause and RLUIPA.

B.  Establishment Clause

Glenn contends that the defendants' policy of having two Christian chaplains, employed by the state, to provide Christian services and religious support to inmates violates the

---

[2] The Free Exercise Clause does not require that "every religious sect or group within a prison-however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

11

Establishment Clause of the First Amendment.  "Under the Establishment Clause, 'Congress shall make no law respecting an establishment of religion.'" Freedom From Religion Found. v. Hanover Sch. Dist., 626 F.3d 1, 6 (1st Cir. 2010) (quoting U.S. Const. amend. I).  Nevertheless, "the government may accommodate religious practice without violating the Establishment Clause." Cutter, 544 U.S. at 713 (internal quotation marks omitted). "Prison employment of full-time chaplains to assist inmates in their religious exercise is a permissible accommodation within the established parameters of the First Amendment" as long as one religion is not given undue preference over another and neutral criteria are used in allocating resources.  Hartmann v. Calif. Dep't of Corrs. & Rehab., 707 F.3d 1114, 1126 (9th Cir. 2013).

   The defendants state that the Department of Corrections Policy and Procedure Directive for hiring chaplains does not require that the chaplains be Christian.  The religious affiliation of the inmate population in the Department of Corrections facilities, which is at least fifty percent Christian, and the limited financial resources available to the Department, along with the need to protect inmates' free exercise rights, support the choice of Christian chaplains.  Glenn has not shown that providing Christian chaplains demonstrates that the defendants are preferring Christianity over Islam in violation of

the Establishment Clause.  See id. ; Johnson-Bey v. Lane, 863 F.2d 1308, 1312 (7th Cir. 1988) (discussing numbers of different religious affiliations in context of state-funded chaplains); Blanks v. Cate, 2013 WL 1129280, at *15 (E.D. Cal. Mar. 18, 2013) (discussing choice of chaplains under Hartmann); Coleman v. Jabe, 2012 WL 7801722, at *10-*11 (W.D. Va. Dec. 26, 2012) (discussing interplay between Establishment and Free Exercise Clauses). Therefore, the defendants are entitled to summary judgment on Glenn's Establishment Clause claim.

C.  Equal Protection

  Glenn contends that the defendants are violating his right to equal protection by providing paid Christian chaplains while denying him a paid Imam.  "The Equal Protection Clause requires that 'all persons similarly situated . . . be treated alike.'" Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 10 (1st Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  To prove an equal protection claim based on religion, the plaintiff must show that he was treated differently from others who were similarly situated and that he was treated differently because of his religion.  Kuperman v. Wrenn, 645 F.3d 69, 78 (1st Cir. 2011).

Because Glenn did not respond to the motion for summary judgment, he has not supported his claim with any factual or legal development.  Presumably, he would argue that he was similarly situated to, but treated differently than, Christian inmates who had paid chaplains and that the different treatment was because he was Muslim.

The summary judgment record, however, shows that the prison's decision to have paid Christian chaplains accommodates the predominant religious affiliation of the inmate population and that the defendants have not hired a Muslim chaplain because they lack funds to do so.  In addition, Chaplain Daly has worked to provide volunteer religious leaders for Muslim inmates.  Under these circumstances, the record does not support a theory that the defendants discriminated against Glenn because of his religion.  See Hartmann, 707 F.3d at 1123-24.

Therefore, the defendants are entitled to summary judgment on Glenn's equal protection claim.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 18) is granted.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

July 17, 2013

cc: Charles Glenn #71763, pro se
    Nancy J. Smith, Esquire